IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | Chapter 11 |
| CHININ USA, INC., | ) | No. 03 B 15378 |
| | ) | Honorable Bruce W. Black |
| Debtor, | ) | |
| | ) | |
| JOSEPH BOZICH, not personally, | ) | |
| but as Plan Trustee of the Bankruptcy | ) | |
| Estate of Chinin USA, Inc.[1] | ) | |
| Plaintiff, | ) | Adv. No.   04 A 01878 |
| | ) | |
| vs. | ) | |
| | ) | |
| ARNOLD MATTSCHULL, BIRGIT | ) | |
| MATTSCHULL and ARNOLD | ) | |
| MATTSCHULL GmbH, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

This matter comes before the court on Defendants' consolidated motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1), (b)(4), (b)(5), and (b)(6),[2] made

---

[1] A "Motion of Substitution of Plaintiff and to Amend Caption" was filed by the Plan Trustee. Defendants opposed the motion and it was taken under advisement with Defendants' motion to dismiss the complaint. I have concluded that the motion to substitute is well-taken. Accordingly, the motion has been granted and the order has been entered.

[2] Fed. R. Civ. P 12(b), in pertinent part, reads as follows:
"(b) . . . the following defenses may at the option of the pleader be made by motion:
    (1) lack of jurisdiction over the subject matter, . . .
    (4) insufficiency of process,
    (5) insufficiency of service of process,
    (6) failure to state a claim upon which relief can be granted. . ."

applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7012(b). For reasons that follow, the motion is denied.

## JURISDICTION

Jurisdiction in this court is proper under 28 U.S.C. §1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. Venue is proper under 28 U.S.C. §1408 and §1409. This matter constitutes a core proceeding under 28 U.S.C. §157(b).

## FACTS AND GENERAL BACKGROUND[3]

Chinin USA, Inc. (Chinin) was incorporated in 1991 by Arnold Mattschull (Mattschull) and Joseph Bozich (Bozich) for the purpose of importing, distributing, and selling licensed sports apparel and private label apparel throughout the United States.

At the inception of the corporation, the parties agreed that Bozich would be the president of Chinin and would oversee sales, marketing, and distribution of Chinin's products in the United States. They also agreed that Mattschull, both individually and through Arnold Mattschull GmbH (GmbH), would act as chairman of Chinin and be responsible for the overseas production, manufacturing, and financing of the apparel to be distributed in the United States. Mattschull was to provide financing in the form of his guarantee on letters of credit and an initial capital contribution of $378,365.

Under the parties' agreement, Mattschull placed orders for merchandise on behalf of

---

[3] The facts are taken from the complaint and from the opinion of the Illinois Appellate Court of which judicial notice is taken.

2

Chinin with overseas suppliers who, in turn, shipped the merchandise to Chinin. As a general practice, Mattschull placed orders either directly or indirectly through entities he owned or controlled along with his overseas partners. The orders were secured by the letters of credit posted by Mattschull, GmbH, or other Mattschull controlled companies in Germany. The supplier then submitted its invoices to GmbH, and Mattschull paid the supplier directly through a bank wire transfer. Mattschull then invoiced Chinin for reimbursement of the amount paid to the supplier by Mattschull. Specifically, the agreement called for Mattschull to be reimbursed for the exact amount of the letter of credit fees paid by Mattschull and the exact amounts he paid directly to suppliers.

In July, 1997, GmbH filed an action in Circuit Court in DuPage County, Illinois, alleging that Chinin owed GmbH over $3 million in unpaid reimbursements. Chinin and Bozich filed a counter-claim alleging that Mattschull and GmbH had breached their fiduciary duties to Chinin by overcharging Chinin for shipping costs, interest charges, and letter of credit fees in excess of $1.8 million. Chinin alleges here that, during the course of discovery in the state court litigation, it learned that Mattschull had overcharged Chinin in the amount of $14.5 million.

Settlement discussions began in the fall of 2000 resulting in a settlement agreement wherein Chinin agreed to pay Mattschull $750,000 and release its claims against Matschull and GmbH in exchange for Mattschull surrendering his interest in Chinin. In addition to broad mutual release provisions, the settlement agreement also contained an integration or merger clause which precluded modification of the agreement absent a writing executed by the parties. During the negotiations leading to the settlement agreement, Chinin proposed the inclusion of a financial contingency clause whereby Chinin's financial obligations under the settlement

3

agreement would be contingent upon its ability to obtain financing to meet its obligations to its prime lender. Mattschull opposed the inclusion of the financial contingency clause and transmitted a draft agreement to Chinin which did not contain one. The draft further provided that the pending lawsuits would be dismissed and Mattschull's attorneys would hold the stock certificates representing Mattschull's interest in Chinin in escrow until all obligations under the settlement agreement were met.

In February of 2001 the 1997 litigation was dismissed pursuant to the settlement agreement. Two months later, after Chinin had been unable to make payments under the settlement agreement, the state court granted Mattschull's motion to reinstate his 1997 action and to consolidate it with a pending trademark infringement case.

In May of 2002 Mattschull and GmbH filed a motion to enforce the settlement agreement. Chinin opposed the motion on the ground that it had no obligation under the agreement because it had not been able to satisfy the financial contingency. Mattschull and GmbH denied any such contingency existed. After a contested hearing, the trial court found that a noncontingent settlement agreement existed, granted Mattschull's motion, and entered judgment against Chinin for $750,000.

Chinin's appeal was denied by the Appellate Court of Illinois, Second District, in September of 2003 with the following findings and conclusions:

- The conclusions of the trial court that there was a meeting of the minds as to the terms of the settlement agreement and that a valid and enforceable settlement agreement existed were not contrary to the manifest weight of the evidence.
- Chinin's performance pursuant to the modified settlement agreement proposed by

4

    Mattschull (i.e. appearance in court, dismissal of pending litigation, and allowance of Mattschull's attorneys to hold the stock certificates in escrow) clearly supported a finding that there was a meeting of the minds and, therefore, Chinin and Bozich were bound by the Agreement.

- Chinin's election of remedies argument was rejected as not applicable because Mattschull's decision to reinstate the lawsuit rather than immediately seek to enforce the settlement agreement was a direct result of Bozich's failure to disclose the sale of Chinin's assets to another entity.

*Mattschull v. Chinin*, No. 00-CH-1216, slip op (2nd Dist. Ill. Sept. 19, 2003).

Five months before the appellate court decision, Chinin filed for Chapter 11 protection. Chinin's plan of reorganization, which contemplated the filing of this adversary proceeding, was confirmed on March 10, 2004, and this adversary complaint was filed fifteen days later.

## THE ADVERSARY COMPLAINT

The complaint contains five counts. The allegations in count 1 center on Chinin's release of its claims against Mattschull and GmbH pursuant to the settlement agreement. Chinin asserts that it did not receive reasonably equivalent value in exchange for the release of those claims, and therefore, the release constitutes a constructively fraudulent transfer under sections 544 and 548 of the Bankruptcy Code[4] and sections 5 and 6 of the Illinois Uniform Fraudulent Transfer Act[5] and should be voided.

---

[4] 11 U.S.C. §§544 and 548.

[5] 740 ILCS 160/5, 160/6(a) and (b).

5

The second count relies on section §9.10 of the Illinois Business Corporation Act[6] for the assertion that the settlement agreement constitutes an illegal distribution from Chinin to Mattschull. The count seeks avoidance of the settlement agreement.

Count 3 alleges that as a shareholder, officer, and director of Chinin, Mattschull owed Chinin a fiduciary duty and that he breached his duty by submitting fraudulent requests for reimbursement from Chinin. For this, Chinin seeks compensatory damages, prejudgment interest, an accounting, punitive damages, and costs.

Counts 4 and 5 contain allegations of fraudulent misrepresentation and conspiracy to defraud, respectively, against Mattschull and his wife, Birgit Mattschull ("Birgit"), and seek the same relief requested in count 3.

## STANDARDS ON MOTION TO DISMISS

The Defendants assert three bases for dismissal with prejudice of the adversary complaint. First, the insufficient process and service of process require dismissal of the entire complaint pursuant to Fed.R.Civ.P. 12(b)(4) and (5). Second, the *Rooker-Feldman* doctrine divests this court of subject matter jurisdiction over counts 1 and 2 pursuant to Fed.R.Civ.P. 12(b)(1). Third, the defenses of *res judicata*, release, and statute of limitations require dismissal of counts 3, 4, and 5 pursuant to Fed.R.Civ.P. 12(b)(6).

A motion to dismiss challenging the adequacy of process and service of process must

---

[6] 805 ILCS 5/9.10, provides in pertinent part:
"Distributions to shareholders. ...(c) No distribution may be made if, after giving it effect:(1) the corporation would be insolvent; or
(2) the net assets of the corporation would be less than zero or less than the maximum amount payable at the time of distribution to shareholders having preferential rights in liquidation if the corporation were then to be liquidated. . . ."

allege facts showing the Plaintiff failed to comply with the requirements of Fed.R.Civ.P. 4. *Bilal v. Rotec Industries, Inc.*, 2004 WL 1794918 at *4 (N.D. Ill., August 4, 2004). Once this issue is raised, the plaintiff must make a prima facia showing of proper service. *Id* at *3.

When resisting a motion to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, the plaintiff bears the burden of demonstrating, by competent proof, that jurisdiction properly lies with the federal court. *Sapperstein v. Hager*, 188 F.3d 852, 855 (7th Cir. 1999) citing *Commodity Trend Service, Inc. v. Commodity Futures Trading Com's*, 149 F.3d 679, 685 (7th Cir. 1998). Rule 12(b)(1) motions may be premised on either facial or factual attacks on jurisdiction. *Villasenor v. Industrial Wire & Cable, Inc.*, 929 F.Supp. 310 (N.D. Ill. 1996). "A facial attack is a challenge to the sufficiency of the pleading itself . . . A factual attack, on the other hand, is . . . a challenge to the factual existence of subject matter jurisdiction." *Id.* quoting *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir), *cert. denied*, 513 U.S. 868, 115 S.Ct. 188 (1994). Although a facial attack requires the court to take all well-pleaded facts as true and construe the pleadings and all reasonable inferences drawn from the pleadings in a light most favorable to the non-moving party, such presumption of correctness falls away under a factual attack wherein the defendant proffers evidence that calls into question the court's jurisdiction. *Commodity Trend* 149 F.3d at 685; *Sapperstein* 188 F.3d at 856. When a party properly raises a factual question attacking subject matter jurisdiction, the court is not bound to accept allegations of the complaint establishing jurisdiction as true. The court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists. Fed.R.Civ.P. 12(b)(1), *see also Stayner v. Village of Sugar Grove (In re Stayner)* 185 B.R. 557 ( Bankr. N.D. Ill. 1995);

*Grafon Corp. v. Hausermann*, 602 F.2d 781, 783 (7th Cir. 1979).

The applicable standard for considering a motion to dismiss under Fed.R.Civ.P. 12(b)(6) requires the court to take all well-pleaded facts as true and construe the pleadings and all reasonable inferences drawn from the pleadings in a light most favorable to the non-moving party. *Prince v. Rescorp Realty*, 940 F.2d 1104 (7th Cir. 1991); *Janowsky v. United States*, 913 F.2d 393 (7th Cir. 1990); *Rogers v. United States*, 902 F.2d 1268 (7th Cir. 1990). Dismissal with prejudice is only appropriate if it appears that no set of facts could entitle the plaintiff to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101 (1957).

## DISCUSSION

A.   Service of Process

Defendants argue the complaint should be dismissed for insufficient process and insufficient service of process pursuant to Fed.R.Civ.P. 12(b)(4) or 12(b)(5) because Mattschull and Birgit, German citizens, were not properly served as required by Rule 4 of the Federal Rules of Civil Procedure. Fed.R.Civ.P. 4.

Rule 4(f) provides that service on an individual in a foreign country "... may be effected ... by any internationally agreed means reasonably calculated to give notice, such as those means authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents." Fed.R.Civ.P. 4(f)(1).

Because service of the complaint and summons was made on Mattschull and Birgit in Germany, the mandates of the Hague Service Convention[7] apply, as is the case whenever service

---

[7]Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters, Nov. 15, 1965 (Hague Service Convention), [1969] 20 U.S.T. 361, T.I.A.S. No. 6638.

is made in a foreign country that is a party to the Convention. *Volkswagenwerk Aktiengeselschaft v. Schlunk,* 486 U.S. 694, 697, 108 S.Ct. 2104, 2107 (1988). Both the United States and Germany are signatories to the Hague Service Convention, which, as a ratified treaty, is the supreme law of the United States. *See* U.S. Const. Art. VI, cl.2. Article V of the Hague Service Convention provides, in pertinent part:

> The Central Authority of the State addressed shall itself serve the document or shall arrange to have it served by an appropriate agency, either-
> a) by a method prescribed by its internal law for the service of documents in domestic actions upon persons who are within its territory, or
> b) by a particular method requested by the applicant, unless such method is incompatible with the law of the State addressed.
> Subject to sub-paragraph (b) of the first paragraph of this Article, the document may always be served by delivery to an addressee who accepts it voluntarily.

20 U.S.T. 361.

The Convention does not specify a standard of legal sufficiency by which the formal delivery of documents is measured. Therefore, it is necessary to refer to the internal law of the forum state, in this case Germany. *Volkswagenwerk Aktiengeselschaft*, 486 U.S. at 700. "If the internal law of the forum state defines the applicable method of serving process as requiring the transmittal of documents abroad, then the Hague Service Convention applies." *Id.*

Applicable sections of *Zustellungsreformgesetz* (ZPO), the German code of civil procedure, provide:

> Section 179: Service in case of Refused Acceptance. If acceptance of the document to be served is refused unjustifiably, the document shall be left in the domicile or office location. . . . The document is deemed being served with the refusal of acceptance.

179 ZPO.

9

> Section 180: Substitute Service by Deposit in the Mailbox. If service according to §178 par. . . . is unfeasible, the document may be deposited in a mailbox belonging to the domicile or office location or in a similar fixture, which the addressee has installed for the purpose of the receipt of mail and which in a usual manner is suitable for safe keeping. The document is deemed being served with the deposit. The server shall note the date of service on the envelope of the document being served.

180 ZPO.

> Section 189: Remedy in Case of Defective Service. If formally correct service may not be evidenced, or if the document has been served by violation of compulsory rules concerning service, service is deemed as effected at the time when the document actually reached the person, to whom according to law, service was directed or could be directed.

189 ZPO.

Service on Mattschull and Birgit was proper under the German Code. Plaintiff's first attempt at service was met with Mattschull and Birgit's refused acceptance. According to §179 ZPO, when service is refused, the document may be left at the domicile of the party being served. In this case, after the initial refusal, Plaintiff filed Requests for Service Abroad of Judicial or Extrajudicial Documents with the German courts to be served by court officials. The German official assigned to serve Mattschull and Birgit at Peter-Geibel-Str 8A in Friedrichsdorf, Germany deposited the summons and complaint in the mailbox he ascertained to be that of Mattschull and Birgit after determining that there was no one present at the residence at the time. Therefore, under German law, service was deemed effected upon these Defendants' refusal to accept service; and actual service was made when the summonses and complaints were deposited in the mailbox at their residence. §179 ZPO.

Additionally, Defendants' second argument that Mattschull and Birgit were not properly served rests on the fact that the certificate of service signed by the serving German official

10

indicated the wrong address. A scriveners error in the certificate of service indicating service made at #8 instead of #8A was not fatal under German and United States law. *Rechtsprechung der Oberlandesgerichte in Zivilsachen Frankfurt* [OLGZ]{Court of Appeal} 20 W 442/95 (Nov. 271997)(F.R.G.) (holding that service is not invalidated by mere fact that certificate of service mentioned house number "14" instead of "40").

Finally, service was not rendered invalid because the dates to respond and appear had passed by the time Mattschull and Birgit were served. "Rule 4 is a flexible rule that should be liberally construed to uphold service so long as a party receives sufficient notice of the complaint." *Chan v. Society Expeditions, Inc.*, 39 F.3d 1398, 1404 (9th Cir. 1994). Substantial compliance with the service requirements of Rule 4 is sufficient so long as the opposing party receives sufficient notice of the complaint. *Id.* Dismissal is generally not justified absent a showing of prejudice. *See* Fed.R.Civ.P. 61; *United Food & Commercial Workers Union v. Alpha Beta Company*, 736 F.2d 1371, 1382 (1984). Mattschull and Birgit had more than 60 days to respond after they were served and have suffered no injustice or discernable prejudice as a result of the belated service.

For the reasons stated above, I find process and service of process to be sufficient under the Hague Convention, the controlling provisions of the German code of civil procedure, and United States law.

II.     The Rooker-Feldman Doctrine

Defendants assert the *Rooker-Feldman* doctrine as a basis for dismissal of counts 1 and 2. The *Rooker-Feldman* doctrine gets its name from two Supreme Court decisions: *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149 (1923), and *District of Columbia Court of Appeals*

11

*v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303 (1983). The doctrine states the general rule that lower federal courts lack subject matter jurisdiction over claims that seek to review or modify a state court judgment. The Supreme Court held in *Rooker* that only the state's appellate courts or the Supreme Court have the power to modify or reverse a state court judgment because lower federal courts have strictly original jurisdiction. *Rooker*, 263 U.S. at 415-16. Sixty years later, in *Feldman*, the Court reaffirmed that holding, stating "a United States District Court has no authority to review final judgments of a state court in judicial proceedings." *Feldman*, 460 U.S. at 482.

The Supreme Court recently returned to *Rooker* and *Feldman* in *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, ___ U.S. ___, 125 S.Ct. 1517 (2005). The *Exxon Mobil* opinion clarifies the narrowness of the *Rooker-Feldman* doctrine and emphasizes its statutory, rather than constitutional, underpinnings. The doctrine is based on 28 U.S.C. § 1257, in which Congress has placed appellate jurisdiction to reverse or modify a state court judgment exclusively in the Supreme Court. *Exxon Mobil*, 125 S.Ct. at 1521. It is limited to "cases brought by state-court losers complaining of *injuries caused by state-court judgments* rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.*, at 1521-22 (*emphasis added*).[8]

In the concluding section of the opinion, the doctrine is stated succinctly:

> *Rooker* and *Feldman* exhibit the limited circumstances in which this Court's appellate jurisdiction over state-court judgments, 28 U.S.C. § 1257, precludes a United States district court from exercising subject-

---

[8] Substitution of the estate trustee as plaintiff in place of Chinin, *see supra* p. 1 and note 1, will not preclude application of *Rooker-Feldman*, because the estate trustee and Chinin are in privity. See *Raleigh v. Haskell (In re Haskell)*, 1998 WL 809520 (Bankr. N.D. Ill).

12

> matter jurisdiction in an action it would otherwise be empowered to adjudicate under a congressional grant of authority, *e.g.*, § 1330 (suits against foreign states), § 1331 (federal question), and § 1332 (diversity). In both cases, the losing party in state court filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment. Plaintiffs in both cases, alleging federal-question jurisdiction, called upon the District Court to overturn an injurious state-court judgment. Because § 1257, as long interpreted, vests authority to review a state court's judgment solely in this Court ... the District Courts in *Rooker* and *Feldman* lacked subject-matter jurisdiction.

*Id.* at 1526.

After a short discussion of the impact of the Full Faith and Credit Act, 28 U.S.C. §1738, on resolution of parallel state and federal litigation, the opinion returns to 28 U.S.C. § 1257 to point out what that section does not require, quoting from a case decided by the Seventh Circuit:

> Nor does § 1257 stop a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court. If a federal plaintiff "present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party ..., then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion." *GASH Assocs. v. Village of Rosemont*, 995 F.2d 726, 728 (C.A.7 1993); accord *Noel v. Hall*, 341 F.3d 1148, 1163-1164 (C.A.9 2003).

*Id.* at 1527.

From my reading of *Exxon Mobil*, two questions are paramount for *Rooker-Feldman* analysis. First, does the federal suit seek to correct an "injury caused by a state court judgment"? Second, does the federal suit constitute an "independent claim" which supports federal jurisdiction even after a related state court judgment?

13

Regarding the first question, it seems obvious that nearly anyone who loses a court case is injured in some way. The difficulty lies in determining whether the injury is caused by the judgment or by something else. The Ninth Circuit case of *Noel v. Hall*, cited with approval in *Exxon Mobil*, appears to provide a helpful distinction in the following statement: "...where the federal plaintiff does not complain of a legal injury caused by a state court judgment, but rather of a legal injury caused by an adverse party, *Rooker-Feldman* does not bar jurisdiction." *Noel v. Hall*, 341 F.3d 1148, 1163 (2003). It is helpful in making this distinction to compare the cause of action in federal court with the cause of action in state court.

I conclude that in counts 1 and 2 of this adversary proceeding Plaintiff is not alleging an injury by the state court judgment. Whether or not the state court had been involved, counts 1 and 2 allege a fraudulent transfer resulting from the settlement agreement. The agreed transfer is the source of the alleged injury. The judgment itself is not. In counts 1 and 2 here, Plaintiffs are not alleging that the state court erred in failing to find this transfer to be a fraudulent transfer. That cause of action was never litigated in the state court. Counts 1 and 2 accept the state court finding that a valid settlement agreement exists. They go beyond that by alleging that part of that agreement, the transfer of claims, gives rise to a new and different cause of action under the Bankruptcy Code.

Accordingly, I conclude that the answer to the first question is "no," because the injury was not caused by the state court judgment, but rather by the settlement agreement itself.

Moreover, counts 1 and 2 appear the type of "independent claim" discussed in *GASH* which makes application of *Rooker-Feldman* improper. Judge Easterbrook's complete passage which was quoted in part in *Exxon Mobil* reads as follows:

14

>The *Rooker-Feldman* doctrine asks: is the federal plaintiff seeking to set
>aside a state court judgment, or does he present some independent claim,
>albeit one that denies a legal conclusion that a state court has reached in a
>case to which he was a party? If the former, then the district court lacks
>jurisdiction; if the latter, then there is jurisdiction and state law
>determines whether the defendant prevails under the principles of
>preclusion.

*GASH Assocs. v. Village of Rosemont*, 995 F.2d 726, 728 (7th Cir. 1993). The plaintiff's argument that the transfer effected by the settlement agreement constituted a fraudulent transfer does not depend on setting aside the state court judgment, because the state court never made a judgment about fraudulent conveyances. A judgment in this court that the settlement agreement may not be enforced may deny "a legal conclusion that a state court has reached," but according to the quoted language from *GASH*, it is permitted under *Rooker-Feldman*.

An example of a case containing an "independent claim" supporting federal jurisdiction is *Sill v. Sweeney (In re Sweeney)*, 276 B.R. 186 (B.A.P. 6th Cir. 2002). *Sweeney* holds that the bankruptcy court has exclusive jurisdiction to determine the dischargeability of a fraud claim. The court reasons as follows:

>The dischargability of a debt must be recognized as a matter separate from the
>merits of the debt itself. Thus, under the *Rooker-Feldman* doctrine, a bankruptcy
>court may not review and redetermine the merits of a debt or set aside the default
>judgment reflecting it, but it may within its exclusive jurisdiction determine
>whether that debt is dischargeable or not.

*Id.* at 195. Just as the dischargeability of a debt "must be recognized as a matter separate from the merits of the debt itself," whether an agreement to transfer property constitutes a fraudulent conveyance under the Bankruptcy Code is a matter separate from questions regarding whether the parties had actually made such an agreement under state contract law.

Thus, the answer to our second question is "yes," an independent claim is present here,

15

that is, the claimed fraudulent conveyance. This is the second basis for rejecting application of *Rooker-Feldman*.

A third, more fundamental, argument for not applying *Rooker-Feldman* in the instant case is suggested by the Ninth Circuit case, *Noel v. Hall*. After discussing the statutes giving rise to *Rooker-Feldman*, the opinion states:

> Under the modern statutory structure, the principle that there should be no appellate review of state court judgments by federal trial courts has two particularly notable statutory exceptions: First, a federal district court has original jurisdiction to entertain petitions for habeas corpus brought by state prisoners who claim that the state court has made an error of federal law... Second, a federal bankruptcy court has original jurisdiction under which it is "empowered to avoid state judgments, *see, e.g.*, 11 U.S.C. §§ 544, 547, 548, 549; to modify them, *see, e.g.*, 11 U.S.C. §§ 1129, 1325; and to discharge them, *see, e.g.*, 11 U.S.C. §§ 727, 1141, 1328."

*Noel v. Hall*, 341 F.3d at 1155 (citation omitted). If the Ninth Circuit is correct that the grant of statutory authority to bankruptcy courts by sections 544 and 548 of the Bankruptcy Code to avoid fraudulent transfers is an exception to the general rule that federal trial courts are not authorized to review state court judgments, then the *Rooker-Feldman* doctrine can have no application in our case because the statutory underpinnings for the doctrine are not present here. This is a third basis for denying the defendants' motion to dismiss counts 1 and 2 on *Rooker-Feldman* grounds.

Defendants cite *Baldi v. Carey (In re Royal)*, 289 B.R. 913 (Bankr. N.D. Ill. 2003), in support of their *Rooker-Feldman* argument. At issue in *Royal* was a motion to dismiss an adversary proceeding brought by the plaintiff chapter 7 bankruptcy trustee to avoid a transfer of assets effected by a state court judgment for dissolution of marriage. After careful review of the *Rooker-Feldman* doctrine, Judge Schmetterer decided that "[t]he issue thus presented is whether the Trustee's UFTA cause of action as pleaded states an 'independent claim' under the *Rooker-*

16

*Feldman* doctrine." *Id.* at 921. He then concluded that the fraudulent transfer claim was not an "independent claim" because "[t]he instant action is inextricably intertwined with the state court judgment because it seeks to overturn the transfer effected by that judgment." *Id.* He then held that he had no jurisdiction.

Although I may disagree with Judge Schmetterer's conclusion on the "independent claim" issue, I do not necessarily disagree with his result. A judgment of dissolution of marriage is the type of state court judgment that most clearly can be the *cause* of a litigant's injury. Even when a marital settlement agreement is present, it is the judgment of dissolution itself which effects the transfer of property and thus causes the injury. Because *Royal* involved a dissolution of marriage judgment and the instant case does not, *Royal* may be distinguished.

### III. Counts 3, 4, and 5

Defendants argue that counts 3, 4, and 5 should be dismissed for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). The purpose of this portion of Rule 12 is primarily to test the sufficiency of a claim for relief, and it is not the appropriate device for resolving factual disputes or resolving the merits of a plaintiff's case. *See generally*, 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* §1356 (3rd ed.2004). Contrary to the general rule, Defendants here attempt to use Rule 12(b)(6) to assert affirmative defenses, arguing that counts 3, 4, and 5 "are barred by the doctrines of *res judicata*, release, and statue of limitations."

The circumstances where affirmative defenses may be asserted as grounds for dismissal under Rule 12(b)(6) are very limited. In *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899

17

(7th Cir. 2004), the court states as follows:

> Orders under Rule 12(b)(6) are not appropriate responses to the invocation of defenses, for plaintiffs need not anticipate and attempt to plead around all potential defenses. Complaints need not contain any information about defenses and may not be dismissed for that omission. . . . Only when the plaintiff pleads itself out of court -- that is, admits all the ingredients of an impenetrable defense -- may a complaint that otherwise states a claim be dismissed under Rule 12(b)(6).

*Id.* at 901. As does ours, that case involved a statute of limitations defense. *See also U.S. Gypsum Co. v. Indiana Gas Co.*, 350 F.3d 623, 626 (7th Cir. 2003). The Seventh Circuit has also applied the general rule to the affirmative defense of release in *Deckard v. General Motors Corp.*, 307 F.3d 556 (7th Cir. 2002).

Because Plaintiff has responded to the Rule 12(b)(6) portion of the motion to dismiss by addressing the merits of Defendants' affirmative defenses rather than making the procedural objection, I have considered treating this portion of the motion as a motion for summary judgment as permitted by the last sentence of Rule 12(b). *See Deckard*, 307 F.3d at 560. I have rejected that option because I am not certain that the material facts have been thoroughly developed and because the parties have not received notice of such treatment. Any future motion for summary judgment regarding affirmative defenses will be significantly focused by the statements of fact required by Local Bankruptcy Rules 7056-1 and 7056-2. Accordingly, the Rule 12(b)(6) portion of the motion to dismiss will also be denied.

## CONCLUSION

For the reasons stated above, Defendants' consolidated motion to dismiss the adversary complaint is denied in its entirety. This memorandum opinion will constitute findings of fact and

conclusions of law. A separate order will be entered.

ENTERED:

*Bruce W. Black*

Bruce W. Black
Bankruptcy Judge

Date: July 15, 2005